OPINION. Disnev, Judge: It is the petitioner’s contention that in the publishing of his books he sold, on the installment basis, all of his rights in the manuscripts, that is, capital assets held more than 6 months, therefore properly reported the income received therefrom as capital gains. He was not, he argues, engaged in the business of selling or writing manuscripts. Contra, the respondent’s view is that the income was ordinary, either because from royalties received or because, even if the contracts were not for royalties and property was sold, it was held primarily for sale to customers in the ordinary course of petitioner’s trade or business, and was, therefore, not in the category of capital assets, therefore that the proceeds could not properly be reported as capital gain. We have found the facts in all pertinent detail and they need not be repeated at length here. The petitioner recognizes that the question is factual. Further, he states: “Perhaps the most important question presented in this case is whether or not the manuscripts held by petitioner were capital assets within the meaning of the Internal Revenue Code.” As basis for the contention that they were such, and obviously for the reason that he says that they were not property held by him “primarily for sale to customers in the ordinary course of his trade or business” within section 117 (a) (1) of the Internal Revenue Code, he contends and requests a finding as follows: The petitioner contends that his writing of mathematical text books is not his trade or occupation, but is nothing more nor less than a hobby to which he devotes his spare time. Regardless of whether petitioner made sales, and not royalty agreements, he is not entitled to application of the capital gains provisions. unless tbe sales were of capital assets, and under tbe statute tbis means unless tbe property was not primarily lield by him for sale to customers in tbe ordinary course of his trade or business. Tbis, therefore, should be our first inquiry since the answer may render superfluous further inquiry, into tbe question whether the contracts were contracts of sale. That the petitioner was a teacher is not to be questioned. But whether his writing of books was a mere hobby, as he terms it, is another question. It is well established that one may have more than one trade or business — even if we separate teaching and writing books. Petitioner’s writing has been done in his time not required for teaching, but we do not think that this demonstrates that writing books is a mere hobby with him. This is not a case of an isolated invention or book written in pursuance of what may be realistically seen as a hobby. Bather, we think, petitioner’s profession or trade and business was that of a teacher-writer, his writing being in connection with his teaching. It can hardly be seen as recreation from teaching. That his activity is not limited to teaching is indicated by the fact that he also, during the war and at the time of trial, has been a consultant for the United States Government. Though the evidence indicates that writing a book or articles for publication is of important assistance in the promotion of a teacher, it is clear to us that the issuance by the petitioner of nine volumes from and including 1923 to about 1947 goes much beyond merely writing to assist promotion in teaching. He did not in his testimony state that he wrote books to assist promotion, and did not refer to promotion, nor did he testify that any publication, after the first one, about 1923, was with the idea of improving on textbooks or due to desire to put into print his classroom methods. His last contract, so far as the record here is involved, with Macmillan Company, was made on February 13,1947. From his writings he had received approximately $4,280 in 1945 and approximately $7,108 in 1946, and in 1947 he received approximately $15,900 therefrom. The record indicates that slightly less than half of his income had been received from such writings since 1935, and more than half from 1945 on. On his income tax returns for 1945, 1946, and 1947 petitioner deducted and the Commissioner allowed expenses averaging roughly $550 per year and incurred in maintaining an office which, under the evidence, he maintained in his home and used in the production of his various writings. Under all of these facts we have come to the conclusion that the petitioner had a trade or business including not only teaching but writing the books involved here. His livelihood was clearly from both. In contending that the manuscripts were sold outright he agrees that they were property. He contends that he had held his manuscripts for more than 6 months prior to contract in each case. We think they were property held by him primarily for sale to customers in the ordinary course of that trade or business. He did not merely develop notes or material for teaching but put his work into form for publication as books; and from such publication he derived a profit under contracts with the various publishers. In the contracts with Farrar & Rinehart, Incorporated, and with John Wiley & Sons he agreed, in substance, to put the material into publication form, as a part of the contract. Since 1935 as above seen his income has been almost 50 per cent from writing, and since it appears that no book was published from 1935 to 1937, when the first contract here involved was made, it seems to follow that since 1937, when the first contract involved was made, and through the years when the alleged sales of manuscripts were made, more than half of his income was from publications. He so admits as to the period since 1945, which covers the time of the last contract here involved. Under all of these circumstances, here involved, we conclude and hold that the petitioner was at the time of the contracts involved here holding his manuscripts primarily for sale to customers in the ordinary course of his trade or business. Petitioner, therefore, did not derive income from the sale of capital assets. This conclusion renders unnecessary examination of the question as to whether the contracts provided or entailed sale of the manuscripts, or were royalty contracts as respondent contends. Decisions will be entered for the respondent.